# In the United States Court of Federal Claims

BID PROTEST
No. 16-1114C
Filed Under Seal: September 21, 2016
Reissued for Publication: October 6, 2016[*]

|  |  |  |
|---|---|---|
| LOCH HARBOUR GROUP, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | 28 U.S.C. § 1491(b); Pre-Award Bid Protest; Motion for a Preliminary Injunction, RCFC 65(a); Motion for a |
| THE UNITED STATES, | ) ) | Temporary Restraining Order, RCFC 65(b). |
| Defendant. | ) ) ) | |

    *Christian B. Nagel*, Counsel of Record, *James J. Holt*, McGuireWoods LLP, Tysons, VA, for plaintiff.

    *Zachary J. Sullivan*, Trial Attorney, *Elizabeth M. Hosford*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, *Aleia Barlow*, Staff Attorney, United States Department of Veterans Affairs, Washington, DC, for defendant.

---

[*] This Memorandum Opinion and Order was originally filed under seal on September 21, 2016 (docket entry no. 25), pursuant to the Protective Order entered in this action on September 9, 2016 (docket entry no. 12). The parties were given an opportunity to advise the Court of their views with respect to what information, if any, should be redacted under the terms of the Protective Order. The parties filed a joint status report on October 6, 2016 notifying the Court that they do not believe any information should be redacted (docket entry no. 24). And so, the Court is reissuing its Opinion and Order dated September 21, 2016 without redactions.

**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFF'S MOTIONS FOR A TEMPORARY
RESTRAINING ORDER AND FOR A PRELIMINARY INJUNCTION**

GRIGGSBY, Judge.

## I.     INTRODUCTION

In this pre-award bid protest matter, plaintiff, Loch Harbour Group, Inc. ("LHG"), protests a decision by the United States Department of Veterans Affairs ("VA") to award a sole-source contract to provide certain verification services for the agency's Vets First Contracting Program to GCC Technologies, LLC ("GCC"), upon the grounds that the award violates the Competition in Contracting Act and that GCC is ineligible for award due to an organizational conflict of interest.  LHG has filed motions for a temporary restraining order and for a preliminary injunction, requesting that the Court enjoin the VA from awarding the contract until the Court resolves the merits of its bid protest.  For the reasons set forth below, the Court **DENIES** LHG's motions.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.  Factual Background

In this pre-award bid protest matter, Loch Harbour Group, Inc. protests a decision by the United States Department of Veterans Affairs to award, on a sole-source basis, a contract for certain verification services to GCC Technologies, LLC, upon the grounds that the award violates the Competition in Contracting Act and that GCC is not eligible for award due to an organizational conflict of interest.  *See generally* Am. Compl.; 41 U.S.C. § 3301.  LHG has moved for a temporary restraining order and for a preliminary injunction, requesting that the Court enjoin the VA from awarding the contract until the Court has resolved the merits of its protest.  Pl. Mot. for TRO at 1; Pl. Mot. for PI at 1.

---

[1] The facts recited in this Memorandum Opinion and Order are taken from LHG's amended complaint ("Am. Compl."); LHG's motion for a temporary restraining order ("Pl. Mot. for TRO"); LHG's motion for a preliminary injunction ("Pl. Mot. for PI"); LHG's memorandum in support of its motions for a temporary restraining order and for a preliminary injunction ("Pl. Memo."); the government's response to LHG's motions ("Def. Resp."); the Declaration of Julie Partridge ("Partridge Decl."); and LHG's reply in support of its motions for a temporary restraining order and for a preliminary injunction ("Pl. Reply").  Except where otherwise noted, the facts cited herein are undisputed.

### 1. The Vets First Program And The LHG Task Order

The United States Department of Veterans Affairs awards contracts to businesses owned by veterans and service-disabled veterans under the Vets First Contracting Program ("Vets First Program"). Am. Compl. at ¶ 10; Partridge Decl. ¶ 2. To identify veterans eligible to participate in the Vets First Program, the VA must verify that applicants seeking to participate in the program are either a veteran-owned small business or a service-disabled veteran-owned small business. Am. Compl. at ¶ 11. The VA's Center for Verification and Evaluation (the "CVE"), an office within the agency's Office of Small & Disadvantaged Business Utilization, is responsible for overseeing this verification process. *Id*.; Def. Resp. at 3.

To perform the verification process, the VA contracts for support from private contractors. Am. Compl. at ¶ 13, Ex. 2; Partridge Decl. at ¶ 3. In this regard, in 2014, the VA awarded a task order to LHG to verify firms under the Vets First Program ("LHG Task Order"). Am. Compl. at ¶¶ 22-23. The LHG Task Order expired on September 13, 2016. *Id*. at ¶ 47; Partridge Decl. at ¶ 14.

GCC currently performs customer service and examination services for the Vets First Program under a different task order. Am. Compl. at ¶ 48; Def. Resp. at 4. This task order will expire on or about September 26, 2016. Def. Resp. at 3 n.2, 4; Partridge Decl. at ¶ 4.

### 2. The June 2016 Solicitation

On June 29, 2016, the VA issued a solicitation seeking proposals to oversee the Vets First Program's verification process (the "June 2016 Solicitation"). Am. Compl. at ¶¶ 41-42; Def. Resp. at 4-5. It is undisputed that LHG was not eligible to compete for that contract as a prime contractor, because LHG did not meet the small business size standards for the North American Industry Classification System ("NAICS") code applicable to the solicitation. Am. Compl. ¶ 41; Def. Resp. at 5. In response to a protest filed before the Government Accountability Office by another contractor, the VA canceled the June 2016 Solicitation on August 2, 2016. *Id*. at ¶ 43-44; Partridge Decl. ¶ 9.

### 3. The VA's Proposed Sole-Source Award

After canceling the June 2016 Solicitation, the VA issued a justification and approval ("J&A") for a proposed sole-source award of a contract to provide verification services for the

3

Vets First Program to GCC on August 18, 2016. Def. Resp. at 5; Partridge Decl. at Ex. 9. The J&A provides in part that, "the award [of the contract to support the Vets First Program] for the long-term effort has been delayed," and "[i]n order to avoid a lapse of critical services, a sole source contract will be issued to one of the current incumbent contractors, GCC." Partridge Decl. at Ex. 9. The J&A further states that "[t]he VA is currently in the planning phase of a requirement for a long-term, competitive contract for the same services." *Id.*

To justify its proposed sole-source award a verification services contract to GCC, the VA relied upon the Veterans Benefits, Health Care, and Information Technology Act of 2006, 38 U.S.C. § 8127. *Id.* This Act allows the VA to award a contract to a veteran-owned small business using other than competitive procedures, if three conditions are met:

> (1) such concern is determined to be a responsible source with respect to performance of such contract opportunity;
> (2) the anticipated award price of the contract (including options) will exceeded the simplified acquisition threshold . . . but will not exceed $5,000,000; and
> (3) in the estimation of the contracting officer, the contract award can be made at a fair and reasonable price that offers best value to the United States.

38 U.S.C. § 8127(c). The J&A explains that the decision to award the contract to GCC "meets all three of the requirements of 38 U.S.C. 8127(c)". *Id.* Specifically, the J&A states that, in accordance with 38 U.S.C. § 8127(c), the contracting officer has determined that GCC is a responsible contractor; that the anticipated award price falls between the simplified acquisition threshold and $5,000,000; and that the contract award is to be made at a fair and reasonable price that offers the best value to the United States. *Id.*

On September 7, 2016−a week prior to the expiration of the LHG Task Order−LHG commenced this matter and sought a temporary restraining order and a preliminary injunction to enjoin the VA from awarding the verification services contract to GCC. *See generally* Am. Compl.; Pl. Mot. for TRO; Pl. Mot. for PI.

### B. Procedural Background

On September 7, 2016, LHG filed the complaint in this matter. *See generally* Compl. On that same day, LHG filed a motion for a temporary restraining order, a motion for a preliminary injunction, and memorandum in support of its motion, requesting that the Court enjoin the VA from awarding a sole-source contract for verification services to GCC until the Court resolves

the merits of this bid protest.  *See generally* Pl. Mot. for TRO; Pl. Mot for PI; s*ee also* Pl. Memo.  LHG attached the Declaration of Katerina Ehrlich Bonnevaux, the LHG project manager for the LHG Task Order, to its memorandum in support of its motions for a temporary restraining order and for a preliminary injunction.  *See* Decl. of Katerina Ehrlich Bonnevaux.

On September 9, 2016, the government filed an unopposed motion for a protective order, and the Court issued a Protective Order on that date.  *See generally* Mot. for Protective Order; Protective Order.  Also on September 9, 2016, LHG filed an amended complaint, the performance work statement for the LHG Task Order and a copy of the June 2016 Solicitation.  *See generally* Am. Compl.  On September 11, 2016, LHG filed a supplemental brief in support of its motions for injunctive relief.  *See generally* Pl. Supp. Brief.  On September 12, 2016, the government filed a response and opposition to LHG's motions for a temporary restraining and for a preliminary injunction.  *See generally* Def. Resp.  The government also filed several documents as attachments to its response, including a Declaration of Julie Partridge, the contracting officer for the VA's verification services contract, and the justification and approval of the sole-source award of that contract to GCC.  *See* Partridge Decl.; Partridge Decl. at Ex. 9.

On September 12, 2016, the Court held an initial status conference in this matter.  On September 12, 2016, LHG filed a reply in support of its motions for a temporary restraining order and for a preliminary injunction.  *See generally* Pl. Reply.  On September 13, 2016, the Court held a hearing on LHG's motions.  During the hearing, the Court issued an oral decision denying LHG's motions for a temporary restraining order and for a preliminary injunction.  The Court's rationale for denying LHG's motions is set forth below.

### III.   JURISDICTION AND LEGAL STANDARDS

#### A.  Bid Protest Jurisdiction And Standing

The Tucker Act grants the United States Court of Federal Claims jurisdiction to consider bid protests brought by "an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."  28 U.S.C. § 1491(b)(1).  The United States Court of Appeals for the Federal Circuit has applied the Competition in Contracting Act's definition of interested party in the context of bid protest matters.  *Am. Fed. of Gov. Employees, AFL-CIO v. United States*, 258 F.3d

1294, 1302 (Fed. Cir. 2001); *see also* 31 U.S.C. § 3551.  The Competition in Contracting Act defines the term "interested party" to mean an "actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or failure to award the contract." 31 U.S.C. § 3551(2).  When the Court determines that a protestor is not an interested party, the protestor lacks standing to pursue a claim and the Court must dismiss the case.  *Rex Servs. Corp. v. United States*, 448 F.3d 1305, 1308 (Fed. Cir. 2006); *see* Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC").

In addition, this Court reviews agency actions under the "arbitrary and capricious" standard in bid protest cases.  *See* 28 U.S.C. § 1491(b)(4) (adopting the standard of review set forth in the Administrative Procedure Act).  And so, under the Administrative Procedure Act standard, an award may be set aside if "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).  In this regard, the United States Court of Appeals for the Federal Circuit has explained that:

> When a challenge is brought on the first ground, the test is whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a "heavy burden" of showing that the award decision had no rational basis.  When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations.

*Id*. (internal citations omitted).

In reviewing an agency's procurement decision, the Court should recognize that the agency's decision is entitled to a "presumption of regularity." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977) (citations omitted).  In addition, the Court should not substitute its judgment for that of the agency.  *Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 663, 672 (1997).  And so, "[t]he protestor must show, by a preponderance of the evidence, that the agency's actions were either without a reasonable basis or in violation of applicable procurement law." *Info. Tech. & Apps. Corp. v. United States*, 51 Fed. Cl. 340, 346 (2001), *aff'd*, 316 F.3d 1312 (Fed. Cir. 2003); *see Gentex Corp. v. United States*, 58 Fed. Cl. 634, 648 (2003).

This standard "is highly deferential." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000). As long as there is "a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion . . . ." *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (internal citations omitted). But, if "the agency entirely fail[s] to consider an important aspect of the problem [or] offer[s] an explanation for its decision that runs counter to the evidence before the agency," then the resulting action lacks a rational basis and, therefore, is defined as "arbitrary and capricious." *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)) (internal quotation marks omitted).

### B. Preliminary Injunctions And Temporary Restraining Orders, RCFC 65

The Tucker Act authorizes this Court to "award any relief that the court considers proper, including . . . injunctive relief." 28 U.S.C. § 1491(b)(2); *see* RCFC 65. However, "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis omitted) (internal citations omitted); *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993) (The award of "a preliminary injunction is a drastic and extraordinary remedy that is not to be routinely granted."). A temporary restraining order is similarly an "extraordinary and drastic remedy." *Jones Automation, Inc. v. United States*, 92 Fed. Cl. 368, 370 (2010) (citations omitted).

In deciding whether to grant emergency injunctive relief, the United States Court of Appeals for the Federal Circuit has directed that the Court consider four factors: (1) whether plaintiff is likely to succeed on the merits of the case; (2) whether plaintiff will suffer irreparable harm if the Court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief. *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004); *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993); *Cincom*, 37 Fed. Cl. at 268 (to obtain a temporary restraining order, plaintiff must show the following: "(1) plaintiff will suffer a specific irreparable injury if performance is not enjoined; (2) plaintiff is likely to succeed on the merits of its claim; (3) the harm to plaintiff outweighs any harm to defendant; and (4)

granting the requested relief serves the public interest"). "Although the factors are not applied mechanically, a movant must establish the existence of both of the first two factors to be entitled to a preliminary injunction," or a temporary restraining order. *Altana Pharma AG v. Teva Pharm. USA, Inc.*, 566 F.3d 999, 1005 (Fed. Cir. 2009) (citing *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001)).

"No one factor, taken individually, is necessarily dispositive" and "the weakness of the showing regarding one factor may be overborne by the strength of the others." *FMC Corp.*, 3 F.3d at 427. But, "the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned to the other factors, to justify the denial" of a motion for a preliminary injunction or for a temporary restraining order. *Id*.

### IV.   LEGAL ANALYSIS

In its motions for a temporary restraining order and for a preliminary injunction, LHG requests that the Court enjoin the VA from awarding a sole-source contract to GCC to provide verification services for the Vets First Program until the Court resolves this bid protest. *See generally* Pl. Mot. for PI; Pl. Mot. for TRO; Pl. Memo. Specifically, LHG argues in its motions that the award of the contract to GCC violates the Competition in Contract Act by failing to employ a "full and open competition through the use of competitive procedures." Am. Compl. at ¶ 6; Pl. Memo. at 11, 17-18. LHG also argues that the sole-source award is improper because GCC is ineligible for the award due to an organizational conflict of interest. Pl. Memo. at 19-23.

The government opposes LHG's motions and argues that the VA's award decision is reasonable and lawful under the Veterans Benefits, Health Care, and Information Technology Act. Def. Resp. at 10-11. For the reasons discussed below, the evidentiary record currently before the Court demonstrates that LHG is not entitled to the emergency injunctive relief that it seeks. And so, the Court **DENIES** LHG's motions. RCFC 65.

#### A.   LHG Has Not Demonstrated That It Has Standing To Pursue Its Claims

As an initial matter, the current record before the Court does not demonstrate that LHG has standing to pursue this bid protest. It is well established that to demonstrate standing, LHG must prove it is either an "actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or failure to award the contract." *Rex Servs.*

*Corp.*, 448 F.3d at 1307.  In this case, the current record does not demonstrate that LHG would be a prospective bidder if the VA were to solicit proposals for a contract to provide verification services for the Vets First Program.

In this regard, it is undisputed that LHG is not a small business under the NAICS code that applied to the June 2016 Solicitation. Am. Compl. ¶ 41; Partridge Decl. at Ex. 5, 8.  It is also undisputed that this same NAICS code apples to the sole-source award at issue in this dispute.  Partridge Decl. at Ex. 9.  Given this, it is reasonable to assume that this NAICS code would also apply to a new solicitation for this work and that LHG would be ineligible to compete for the award of that contract.  And so, LHG has not demonstrated thus far in the litigation that it has standing to bring its bid protest.

### B.  LHG Has Not Shown That It Is Entitled To Injunctive Relief

Even if LHG could demonstrate that it has standing to pursue its claim, the current evidentiary record does not support LHG's request for emergency injunctive relief.  It is well established that temporary restraining orders and preliminary injunctions are extraordinary and drastic remedies that should not be granted unless the movant, by a clear showing, carries the burden of persuasion. *Mazurek*, 520 U.S. at 972.  For this reason, the United States Court of Appeals for the Federal Circuit has held that this Court must consider four factors when deciding whether to grant such emergency injunctive relief:  (1) whether plaintiff is likely to succeed on the merits of the case; (2) whether plaintiff will suffer irreparable harm if the Court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief.  *PGBA*, 389 F.3d at 1228-29; *Cincom*, 37 Fed. Cl. at 268 (applying the same four-factor test when determining whether to grant a motion for a temporary restraining order).

In this case, LHG must establish the existence of both of the first two factors to be entitled to injunctive relief.  *Altana Pharma AG*, 566 F.3d at 1005.  LHG has not met its burden here.

### 1.  LHG Is Unlikely To Succeed Upon The Merits Of Its Claims

First, LHG has not demonstrated a likelihood of success upon the merits of its claims.  In the complaint, LHG alleges the VA had violated the Competition in Contracting Act by deciding

9

to make a sole-source award of the verification services contract to GCC. Am. Compl. at ¶ 6. But, the Competition in Contracting Act does not apply "in the case of procurement procedures otherwise expressly authorized by statute." 41 U.S.C. § 3301(a).

In this case, the current evidentiary record shows that, in awarding the subject contract to GCC, the VA relied upon the Veterans Benefits, Health Care, and Information Technology Act, which provides the contracting officer with the authority to award a contract to a veteran-owned small business using other than competitive procedures under certain conditions. 38 U.S.C. § 8127; Partridge Decl. at Ex. 9. In particular, the justification and approval for this sole-source award states that the proposed sole-source award to GCC "action meets all three of the requirements of" that act. *Id*. The J&A also demonstrates that the VA's contracting officer determined that, GCC is a responsible contractor; the anticipated award price falls between the simplified acquisition threshold and $5,000,000; and that the contract award is to be made at a fair and reasonable price that offers the best value to the United States in accordance with the requirements of the Veterans Benefits, Health Care, and Information Technology Act. *Id*. And so, the record evidence does not demonstrate that LHG is likely to succeed upon the merits of its CICA claim.

LHG also raises several arguments in its reply brief to suggest that the VA's award decision does not comply with the Veterans Benefits, Health Care, and Information Technology Act. Pl. Reply at 3-5. But, these arguments are not substantiated by the current evidentiary record. *See* Pl. Reply. And so, plaintiff has not shown that it has a substantial likelihood of success upon the merits of its claim.

The merits of plaintiff's organizational conflict of interest ("OCI") claim are also called into question by the current evidentiary record. In the memorandum in support of LHG's motions for emergency injunctive relief, LHG argues that the Court should enjoin the award of the subject contract because GCC has an OCI based upon unequal access to information and biased ground rules. Pl. Memo. at 19-24. But, to prove an OCI, LHG must identify hard facts to support this claim. A mere inference or suspicion of an actual or apparent conflict is not enough. *PAI Corp.,* 614 F.3d at 1352. LHG simply has not done so here. *See generally* Am. Compl.; Pl. Memo.; Pl. Reply. In fact, LHG provides no facts in its submissions to support its OCI claim.

*See generally* Am. Compl.; Pl. Rep.  And so, LHG has not shown that it has a substantial likelihood of success upon the merits of its OCI claim.

### 2.  The Remaining Factors Weigh Against Granting Injunctive Relief

The remaining factors that the Court considers in deciding LHG's motions also weigh against granting emergency injunctive relief.  Even if the Court were to assume that LHG will suffer irreparable harm absent emergency injunctive relief, the other factors that the Court must consider weigh against granting such relief.[2]  The balance of the hardships in this case weighs against granting emergency injunctive relief, because a delay of the award of the contract will result in increased costs and a disruption in critical services needed to support the Vets First Program.  *See* Def. Resp. at 16-17.  In addition, the public interest is best served by denying LHG's request for injunctive relief, because a backlog in the verification process for this program could result if the Court enjoins award of the subject contract to GCC.  And so, LHG has not demonstrated that it is entitled to such relief.

### V.  CONCLUSION

In sum, LHG has not met its heavy burden to show that it is entitled to emergency injunctive relief.  Rather, the current evidentiary record indicates that LHG does not have a substantial likelihood of success upon the merits of its claims.  And so, for the foregoing reasons, the Court **DENIES** LHG's motions for a temporary restraining order and for a preliminary injunction.

Some of the information contained in this Memorandum Opinion and Order may be considered protected information subject to the Protective Order entered in this matter on September 9, 2016.  This Memorandum Opinion and Order shall therefore be filed under seal.  The parties shall review the Memorandum Opinion and Order to determine whether, in their view, any information should be redacted in accordance with the terms of the Protective Order prior to publication on the Court's official website.

---

[2] LHG argues that it will suffer irreparable harm without emergency injunctive relief, because it will no longer be able to perform work under its task order and because LHG may lose some of its employees to GCC.  *See* Pl. Memo. at 24; Pl. Supp. Brief at Ex. 1.  But, such economic harm is generally insufficient to establish irreparable harm.  *See Minor Metals, Inc. v. United States*, 38 Fed. Cl. 379, 381-82 (1997) (citing *Zenith Radio Corp. v. United States*, 710 F.2d 806, 810 (Fed. Cir. 1983)).

The parties shall **FILE** a joint status report, on or before **October 12, 2016**, identifying the information, if any, that they contend should be redacted in this Memorandum Opinion and Order, together with an explanation of the basis for each proposed redaction.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge